IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Joseph Talley, ) | | Case No. 6:24-cv-06240-JDA |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | **OPINION AND ORDER** |
| ) | | |
| ECPI University, Karen Burgess, ) | | |
| Carolyn Galloway Miller, Drew ) | | |
| McCabe, Ursula Singleton, Ryan ) | | |
| Williams, Patty Bailey, ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |

This matter is before the Court on a motion by Defendants to stay and to compel arbitration. [Doc. 37.] Plaintiff has filed a response, and Defendants have filed a reply. [Docs. 39; 41.] These motions are ripe for consideration. For the reasons stated herein, the Court grants the motion and dismisses the action without prejudice.

## BACKGROUND

**The Amended Complaint's Allegations**

Plaintiff, a former student at the Greenville, South Carolina, campus of Defendant ECPI University ("ECPI"), alleges that another ECPI student falsely represented to ECPI staff and other students between December 2022 and March 2023 that Plaintiff had sexually harassed and stalked her. [Doc. 34 at 4–5.] On March 17, 2023, Plaintiff was dismissed from the ECPI University Licensed Practical Nursing Program for one semester. [*Id.*] No Title IX hearing or investigation was concluded prior to the dismissal, and Plaintiff's accuser was not given any penalty despite her claims being found to be false. [*Id.* at 5.] Plaintiff alleges that when he returned following his suspension, he faced

"a hostile educational environment and a subsequent mob mentality throughout the school among [his] peers/staff." [*Id.*] Also, on March 23, 2023, Defendant Karen Burgess was "made aware of a threat to [Plaintiff's] life" by another ECPI student but that student was not reprimanded and was allowed to continue in the program. [*Id.*]

During the months of May to August 2023, Plaintiff was repeatedly asked by a former student if he was having sex with the assistant director of the nursing program because it was believed by several staff and students that Plaintiff was receiving preferential treatment. [*Id.* at 5–6.] No individual involved was ever punished. [*Id.*]

On August 21, 2023, Plaintiff "made a complaint to the Department of Veterans Affairs Education and Training benefits . . . in reference to retaliation, breach of contract, fraud, sexual harassment, and Title IX violations that [he] had experienced while a student at ECPI University." [*Id.* at 6 (capitalization omitted).] The next day, Defendants ECPI, Burgess, Ryan Williams, Patty Bailey, Carolyn Miller, and Drew McCabe "retaliated by conducting a Judiciary Review Board in [Plaintiff's] absence and suspend[ing] [him] indefinitely." [*Id.*]

Plaintiff appears to allege that Defendants discriminated against him on the basis of his gender in violation of Title IX of the Education Amendments of 1972 ("Title IX") and Title VII of the Civil Rights Act of 1964 ("Title VII"); caused him emotional distress; breached its contract with him; deprived him of due process; and engaged in sexual harassment in violation of the South Carolina Human Affairs Law ("SCHAL"), Title VII, and Title IX.[1] [Doc. 34.]

---

[1] The Complaint and Amended Complaint were filed pro se, but counsel has since filed a notice of appearance on behalf of Plaintiff. [Docs. 1; 34; 38.]

2

**Defendants' Motion to Stay and to Compel Arbitration**

On April 23, 2025, Defendants filed a motion to stay and to compel arbitration and attached to the motion an "Enrollment Agreement" and an "Arbitration Agreement and Waiver of Jury Trial" (the "Arbitration Agreement"), both of which Plaintiff purportedly signed electronically. [Docs. 37; 37-2; 37-3.] Among other things, the Enrollment Agreement provides, in relevant part, "By signing below, I agree to the terms of this Agreement, the Tuition and Fee Schedule, the Arbitration Agreement and Waiver of Jury Trial, the Release and Hold Harmless Agreement, the School Catalog, together with other published ECPI policies, procedures, and student conduct codes, all of which shall constitute the entire agreement between ECPI and me." [Doc. 37-2 at 2.] The Enrollment Agreement also provides that Plaintiff agrees to "resolve any disputes exclusively through binding arbitration in accordance with the [Arbitration Agreement]." [*Id.* at 3 ¶ 6.]

The Arbitration Agreement provides, in pertinent part:

> Any dispute I may bring against ECPI, or any of its parents, subsidiaries, officers, directors, or employees, or which ECPI may bring against me, no matter how characterized, pleaded, or styled, shall be resolved by binding arbitration conducted by the American Arbitration Association (the "AAA"), under its Consumer Arbitration Rules ("Consumer Rules") . . . . The arbitration shall be conducted and decided by a single Arbitrator. Any remedy available from a Court under the law shall be available in the arbitration. The arbitration hearing will be conducted in the city in which the campus is located.

[Doc. 37-3 ¶ 1.] Moreover, the Arbitration Agreement specifically provides that it is governed by and shall be interpreted in accordance with the Federal Arbitration Act (the "FAA" or the "Act"). [*Id.* ¶ 3.]

3

## APPLICABLE LAW

**Motions to Compel Arbitration**

The FAA establishes a "strong federal public policy in favor of enforcing arbitration agreements" and is designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 219 (1985). The Act was enacted "in 1925 in order to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts." *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 639 (4th Cir. 2002) (internal quotation marks omitted). "Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002).

The FAA provides that arbitration clauses in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a district court must compel arbitration and stay court proceedings if the parties have agreed to arbitrate their dispute. *Id*. §§ 2, 3. But, if the "making of the arbitration agreement or the failure, neglect, or refusal to perform the same" is in issue, a district court must first decide whether the arbitration clause is enforceable against the parties. *Id*. § 4. "'[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349 (4th Cir. 2001) (internal quotation marks omitted).

A party seeking to compel arbitration must establish the following four elements: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute.[2] *Am. Gen. Life & Accident Ins. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005). "[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501 (internal quotation marks omitted).

"Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Id.* "Defendant, as the party seeking to enforce the Agreement, bears the initial burden of persuading this court that the parties entered into an enforceable arbitration agreement." *Gordon v. TBC Retail Grp., Inc.*, No. 2:14-cv-03365-DCN, 2016 WL 4247738, at *5 (D.S.C. Aug. 11, 2016) (internal quotation marks omitted). "If defendant makes such a showing, then the burden shifts to the [plaintiff] to show that even though there was some written contract, [the plaintiff] did not actually agree to it[—]because [his] signature was forged, the terms of the contract were

---

[2] In deciding whether the parties have formed an agreement to arbitrate, the court must conduct a trial "when a party unequivocally denies that any arbitration agreement exists, and shows sufficient facts in support thereof." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (cleaned up). "To decide whether sufficient facts support a party's denial of an agreement to arbitrate, the district court is obliged to employ a standard such as the summary judgment test" and "is entitled to consider materials other than the complaint and its supporting documents." *Id.* (internal quotation marks omitted). "If the record reveals a genuine dispute of material fact regarding the existence of an agreement to arbitrate, the court shall proceed summarily and conduct a trial on the motion to compel arbitration." *Id.* (cleaned up). In this context, "[a] factual dispute is material if the resolution thereof might affect the outcome of the motion under the governing law." *Id.* (cleaned up).

5

misrepresented, or some other reason evincing lack of true agreement." *Id.* (alterations in original) (internal quotation marks omitted). Where a valid arbitration agreement exists and covers the claims at issue, this Court has "no choice but to grant a motion to compel arbitration." *Adkins*, 303 F.3d at 500.

**Remedy When Arbitration is Compelled**

The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration, and "[t]his stay-of-litigation provision is mandatory." *Id.* (internal quotation marks omitted); *see also* 9 U.S.C. § 3. But, the Fourth Circuit has held that if all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is "a proper remedy." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). Although the Fourth Circuit has acknowledged the inconsistency between its opinions on this issue, *see Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) ("There may be some tension between our decision . . . indicating that a stay is required when the arbitration agreement 'covers the matter in dispute'—and *Choice Hotels*—sanctioning dismissal 'when all of the issues presented . . . are arbitrable.'" (second alteration in original)), "courts in this district continue to follow the holding of *Choice Hotels* and have dismissed actions when all the claims are arbitrable," *Fowler v. Dolgencorp, LLC*, No. 6:23-cv-05179-JDA, 2024 WL 1445408, at *2 n.* (D.S.C. Apr. 3, 2024).

**Rule 12(b)(6) Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering

a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference.  *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985).  If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)

7

("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief.[3] *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

---

[3] "[E]ven after *Iqbal* and *Twombly*, a plaintiff may state a claim based 'upon information and belief,' especially if the facts are peculiarly within the defendant's knowledge and control, so long as an inference of culpability is plausible." *Dedrick v. Abilene Motor Express, Inc.*, No. 1:21CV00027, 2021 WL 5236817, at *6 (W.D. Va. Nov. 8, 2021); *see Wells v. Moore Cnty. Schs. Bd. of Educ.*, No. 1:23CV412, 2025 WL 1348491, at *6 (M.D.N.C. May 8, 2025).

## **DISCUSSION**

**Motion to Compel Arbitration**

### *The Parties' Arguments*

Defendants seek to compel arbitration of the claims alleged in Plaintiff's Amended Complaint pursuant to the Arbitration Agreement, contending that each of the four required elements is satisfied. [Doc. 37-1.] Plaintiff, on the other hand, argues that (1) the Ending Forced Arbitration Act ("EFAA") precludes Defendants from requiring him to arbitrate his claims; (2) the arbitration provisions are unconscionable under South Carolina law; (3) Defendants have waived their right to arbitration; and (4) Plaintiff's claims involve statutory rights that should be decided in a judicial forum rather than in arbitration. [Doc. 39.] The Court will address these arguments seriatim.

### *Satisfaction of the Four Elements*

Initially, the Court concludes that Defendants have established each of the four elements required to compel arbitration. First, a dispute exists between the parties as shown by the allegations in the Amended Complaint. [Doc. 34.] Second, a written arbitration agreement purports to cover the dispute. Specifically, the Arbitration Agreement requires Plaintiff to submit "[a]ny dispute [he] may bring against ECPI, or any of its parents, subsidiaries, officers, directors, or employees, . . . no matter how characterized, pleaded, or styled," to arbitration. [Doc. 37-3 ¶ 1.] Also, under the Enrollment Agreement, Plaintiff agreed "to "resolve any disputes exclusively through binding arbitration in accordance with the [Arbitration Agreement]." [Doc. 37-2 at 3 ¶ 6.]

Third, the transaction in this case implicates interstate commerce.[4] And finally, Plaintiff has refused to arbitrate this action as demonstrated by his filing this lawsuit and his opposing Defendants' motions to compel arbitration. [Docs. 1; 39.]

### *Plaintiff's Arguments*

#### The EFAA

The EFAA creates a limited exception to the enforcement of arbitration provisions under the FAA. *See* 9 U.S.C. §§ 401–02. In particular, the EFAA provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

---

[4] "[T]he FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012); *see McCumbee v. M Pizza, Inc.*, No. 3:22-cv-128, 2023 WL 2725991, at *13 (N.D. W. Va. Mar. 30, 2023) ("[T]he Fourth Circuit does not require parties to affirmatively demonstrate that [the interstate commerce] element has been met."); *Ghouri v. AmSher Collection Servs.*, No. 1:22-cv-00503 (RDA/JFA), 2022 WL 11964565, at *5 (E.D. Va. Oct. 19, 2022) (same). In any event, ECPI is a Virginia limited liability company organized in Virginia with its principal place of business there, *see* State Corporation Commission Clerk's Information System, cis.scc.virginia.gov/EntitySearch/Index (search "ECPI University") (last visited Oct. 30, 2025); *see Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (observing that courts may "properly take judicial notice of matters of public record"), and which has campuses in multiple states [Doc. 37-2 at 4; *see also* Doc. 37-1 at 5]. *See Fitzgerald v. Faucette*, No. 9:24-cv-00908-BHH-MGB, 2024 WL 5290929, at *2 n.1 (D.S.C. Apr. 23, 2024) (concluding that "the transaction at issue—[the plaintiff's] employment with [the defendant]—[wa]s related to interstate commerce [for purposes of the FAA] because [the defendant] [wa]s a Limited Liability Company organized under the laws of Michigan … that operate[d] in 26 states" (internal quotation marks omitted)), *Report and Recommendation adopted by* 2024 WL 5087128 (D.S.C. Dec. 12, 2024).

9 U.S.C. § 402(a).  The court determines whether the EFAA applies to a dispute.  *Baque v. Hendrick Auto. Grp., LLC*, No. 2:24-cv-03041-DCN-KFM, 2024 WL 4584068, at *7 (D.S.C. Oct. 15, 2024), *Report and Recommendation adopted by* Dkt. Entry 29 (D.S.C. Dec. 5, 2024)*.*

"The stated purpose of the EFAA is to empower sexual harassment claimants to pursue their claims in a judicial, rather than arbitral, forum."  *Newman v. Ambry Genetics Corp.*, No. 2:24-cv-00887-BHH-MGB, 2024 WL 4164738, at *6 (D.S.C. Apr. 26, 2024), *Report and Recommendation adopted in relevant part by* 2024 WL 3811606 (D.S.C. Aug. 14, 2024).  Thus, the EFAA applies only to the victim of sexual harassment or sexual assault; it "does not encompass claims brought by a plaintiff who did not personally experience or report sexual assault or harassment." *Id.*  Moreover, "to qualify as a 'sexual harassment dispute' under the EFAA, the sexual harassment claim must be sufficiently pled to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."  *Id.* at *3.

Here, the EFAA does not bar arbitration because the Amended Complaint fails to state a viable sexual harassment claim against Defendants.  To state a Title IX claim premised on sexual harassment or assault, a plaintiff must allege four elements:

> (1) that the educational institution receives federal funds; (2) that the plaintiff was subjected to harassment based on [his] sex; (3) that the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity; and (4) that there is a basis for imputing liability to the institution.

*Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018).  Here, the Amended Complaint fails to state a viable sexual harassment claim against Defendants because Plaintiff does not plausibly allege that any action was taken against him *based on his sex*.

11

Rather, he alleges that he was subjected to unwelcome treatment based on the perception that he had engaged in objectionable conduct, namely, harassing and stalking another student and engaging in sexual relations with an ECPI staff member. [Doc. 34 at 4–6]; see Wolfe v. Fayetteville, Ark. Sch. Dist., 648 F.3d 860, 865–67 (4th Cir. 2011) (holding that to recover on a Title IX deliberate indifference claim the plaintiff must show that the harasser was motivated by the plaintiff's gender or failure to conform with gender stereotypes). Because the Amended Complaint fails to state a viable claim for sexual harassment, the EFAA does not bar arbitration. See Newman, 2024 WL 4164738, at *3

### Whether the Arbitration Agreement is Unconscionable

Plaintiff argues that this Court should not enforce the Arbitration Agreement because it is unconscionable. [Doc. 39 at 2.] Specifically, Plaintiff argues that the Arbitration Agreement "was embedded in ECPI's boilerplate enrollment documents and presented to Plaintiff with no opportunity for negotiation." [Id.] Plaintiff also contends that the Arbitration Agreement "lacks mutuality, favoring ECPI significantly, and includes no provisions that would assure due process, transparency, or parity of forum." [Id.] The Court disagrees.

Even if the Arbitration Agreement could be considered a contract of adhesion—a standard form contract with non-negotiable terms—"[a]dhesion contracts . . . are not per se unconscionable" under South Carolina law. Simpson v. MSA of Myrtle Beach, Inc., 644 S.E.2d 663, 669 (S.C. 2007). Instead, under South Carolina law, an unconscionable contract requires both the absence of meaningful choice as to the terms and "terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." Id. at 668. The overarching focus of the unconscionability

inquiry is "whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." *Id.*

The Arbitration Agreement in this case is not unconscionable. First, Plaintiff's assertion notwithstanding, the Arbitration Agreement was not buried in an enrollment document. Rather, it is a separate, stand-alone document with the title "Arbitration Agreement and Waiver of Jury Trial" in bold at the top of the document. [Doc. 37-3.] The document is limited to issues related to disputes and arbitration, and it specifically required that Plaintiff read and initial each separate provision. [*Id.*]

Moreover, the Arbitration Agreement does not impose oppressive terms on Plaintiff, but rather ensures that Plaintiff's rights are protected in an even-handed manner. For example, the Arbitration Agreement provides that arbitration shall be conducted in accordance with the American Arbitration Association's Consumer Arbitration Rules. [*Id.* ¶ 1.] This Court has observed that the "AAA's rules ensure that the plaintiff's rights are protected." *Roland-Davis v. Remington Coll.*, No. 3:12-2227-MBS, 2013 WL 4692733, at *6 (D.S.C. Aug. 29, 2013). Furthermore, the Arbitration Agreement provides that "[a]ny remedy available from a Court under the law shall be available in the arbitration." [Doc. 37-3 ¶ 1.] Thus, the Arbitration Agreement does not deprive Plaintiff of a remedy for his claims but only decides the forum in which he may seek his remedy. *See Munoz v. Green Tree Fin. Corp.*, 542 S.E.2d 360, 365 (S.C. 2001) (declining to invalidate an arbitration agreement for lack of mutuality when the plaintiffs were not deprived of a remedy).

Waiver

Plaintiff also argues that "Defendants have forfeited their right to enforce" the Arbitration Agreement. [Doc. 39 at 3.] The Court disagrees.

13

"Under the FAA, a party may lose its right to compel arbitration if it is in default in proceeding with such arbitration." *Rota-McLarty*, 700 F.3d at 702 (internal quotation marks omitted). Generally, a party loses its right to insist on arbitration only when the party "so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (cleaned up). "[T]he dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*. . . . Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration." *Id.* "[T]he party opposing arbitration bears a heavy burden to prove default . . . ." *Rota-McLarty*, 700 F.3d at 702.

In support of his default argument, Plaintiff contends that "Defendants responded to Plaintiff's original pro se complaint, participated in the development of the record, and filed a series of motions and responsive pleadings that engaged the court's judicial resources.'" [Doc. 39 at 3.] The Court concludes, however, that Plaintiff's characterization of Defendants' efforts in this case has no support in the record. The only thing that Defendants have done in this case is assert their right to enforce the Arbitration Agreement; from the very beginning of this case, every filing by Defendants has been related to enforcement of the Arbitration Agreement. [*See* Docs. 14; 25; 29; 30; 37.] Accordingly, Defendants have not waived their right to arbitration.[5]  *See Rota-McLarty*,

---

[5] Additionally, Plaintiff has not shown that Defendants' actions have prejudiced Plaintiff. *See Oyekan v. Educ. Corp. of Am.*, No. 4:18-CV-01785-RBH, 2019 WL 978865, at *5 (D.S.C. Feb. 28, 2019) ("The Fourth Circuit has determined that a party may waive its right to compel arbitration if the party so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the other party." (internal quotation marks omitted)).

14

700 F.3d at 704 (holding that defendant did not forfeit its right to insist on arbitration when it removed the plaintiff's case to federal court, filed an answer, proposed a bifurcated discovery plan, deposed the plaintiff, responded to the plaintiff's discovery requests, and filed no dispositive motions).

### Statutory Rights Can Be Enforced in Arbitration

Plaintiff finally argues that his claims "implicate federal and state civil rights statutes" whose "public policy interests . . . strongly favor resolution in a judicial, rather than private, forum." [Doc. 39 at 3.] The Court disagrees. In *Gilmer v. Interstate/Johnson Lane Corp.*, the Supreme Court expressly stated that "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." 500 U.S. 20, 26 (1991). In *Gilmer*, the Supreme Court held that a statutory discrimination claim brought by the plaintiff under the Age Discrimination in Employment Act was subject to the plaintiff's arbitration agreement. *Id.* at 35. In reaching this conclusion, the Supreme Court stated:

> Although all statutory claims may not be appropriate for arbitration, "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." In this regard, we note that the burden is on Gilmer to show that Congress intended to preclude a waiver of a judicial forum for ADEA claims. If such an intention exists, it will be discoverable in the text of the ADEA, its legislative history, or an "inherent conflict" between arbitration and the ADEA's underlying purposes. Throughout such an inquiry, it should be kept in mind that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."

*Id.* at 26 (internal citations omitted).

Here, Plaintiff contends that compelling arbitration of his claims would "undermine [Title IX's statutory] objectives" and "insulate institutional misconduct from the public accountability that judicial proceedings are designed to ensure." [Doc. 39 at 3.] However, Plaintiff cites no language from Title IX or any other legal authority in support of this assertion. Indeed, courts have held that Title IX claims are subject to arbitration. *See Klein v. Atp Flight Sch., LLP*, No. 14-CV-1522 (JFB)(GRB), 2014 WL 3013294, at *10 n.8 (E.D.N.Y. July 3, 2014) (concluding "there is no congressional intent to prevent the arbitration of Title IX claims"); *Peterson v. New England Inst. of Tech.*, No. 14-63-ML, 2014 WL 2573653, at *6 (D.R.I. June 9, 2014) (holding that the plaintiff "fail[ed] to establish that Congress intended to preclude a waiver of judicial remedies in Title IX cases").

For all of these reasons, the Court grants Defendants' motion to compel arbitration.

**The Proper Remedy**

Having concluded that arbitration should be compelled in this case, the Court must now consider whether to stay or dismiss this action. As noted, "courts in this district continue to follow the holding of *Choice Hotels* and . . . dismiss[] actions when all the claims are arbitrable." *Fowler*, 2024 WL 1445408, at *2 n.*. Because each cause of action in the Amended Complaint falls within the scope of the Arbitration Agreement, the Court concludes that dismissal of this matter is appropriate.

**CONCLUSION**

Based upon the foregoing, the motion to stay and to compel arbitration filed by Defendants [Doc. 37] is GRANTED, and this action is DISMISSED without prejudice.

IT IS SO ORDERED.

s/Jacquelyn D. Austin<br>United States District Judge

November 4, 2025
Greenville, South Carolina